IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 18-cv-01956-RBJ

NGOZI J. AZU,

      Plaintiff,

v.

SAM'S CLUB, INC.,
WALMART STORES,

      Defendants.

---

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on defendant Sam's West, Inc.[1] ("Sam's Club")'s motion

for summary judgment. *See* ECF No. 46. For the reasons stated herein, the motion is

GRANTED in part and DENIED in part.

## I. BACKGROUND

Plaintiff Ngozi Azu ("Azu") is a former employee of Sam's Club. She is a black female

who was born in Nigeria and was fifty-three years old when she resigned from Sam's Club. *See*

ECF No. 46 ¶ 1. She claims that Sam's Club created a hostile work environment based on her

race, national origin, sex, and age and constructively discharged her in violation of Title VII of

the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination

in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*

Azu worked as a Pharmacy Manager at Sam's Club in Aurora, Colorado, from 2003 to

---

[1] Defendant is improperly named "Sam's Club, Inc." in the Second Amended Complaint. *See* ECF No.
46 at 1; ECF No. 22 at 1.

about May 19, 2017.  *See id.* ¶ 2.  In 2013 she began taking online courses to receive her Doctor of Pharmacy ("PharmD") degree.  *See id.* ¶ 7.  She claims that in February 2016 she received approval from her then-manager, Thomas Gary, to take time off with full pay to accommodate her PharmD clinical rotations.  *See id*.  Between September and December 2016 Azu participated in two six-week PharmD clinical rotations, during which time she worked at Sam's Club for one to two days per week.  *See id*. ¶ 8.  Thereafter she returned to a full-time schedule.  *See id*.

Performance Evaluations and Coachings

Azu's pharmacy sales declined while she was on rotation.  *See id*. at 3 n.3.  Azu claims that this decline was due to Dmitry Kunin's creation of "false sales target[s]," (2) Sam's Club's losing Kaiser Company's health insurance clients, and (3) many of Sam's Club's pharmacy sales moving from in-store to online.  *See* ECF No. 49-1 ¶ 4; ECF No. 22 ¶ 6.

Between 2016 and 2017 Azu received two negative performance reviews and two performance coachings.  Gary gave Azu the first "Needs Development" negative performance evaluation at some point in 2016.  *See* ECF No. 46 ¶ 4.

Then, during one of Azu's rotations in approximately November 2016, Sam's Club replaced Gary with Dmitry Kunin.  *See id*. ¶ 9.  Sam's Club tasked Kunin with "improving the market's business growth and performance, and ensuring pharmacies followed consistent best practices."  *See id*.  He conducted approximately six visits to Azu's pharmacy between January 2017 and May 2017.  *See id*. ¶ 13.Kunin was vocal about his displeasure with Azu's clinical rotation arrangement.  During a December 20, 2016 phone call, Kunin told Azu that she should not have received full pay while on rotation because she did not have sufficient accumulated paid time off ("PTO").  *See id*. ¶ 11.  Kunin raised this issue again when they first met in person in January 2017, and subsequently "[e]very single time" they met thereafter.  *Id*. ¶ 12.  During that

2

first meeting, Kunin also asked Azu where she was from and what made her decide to come to the United States.  *See id*. ¶ 27.

Kunin gave Azu her first performance coaching on approximately February 22, 2017 based on "numerous performance deficiencies and compliance areas" that Kunin had previously discussed with Azu.  *Id*. ¶ 14.  The coaching document described several performance, compliance, and safety deficiencies, including "not fixing and executing on model pharmacy standards, having undated records, lack of organization, allowing for the pharmacy's blood pressure machine to be broken for over five days, not updating the 30/60/90 day plan, not labeling locked drawers, and keeping controlled substance keys hanging in drawers."  *Id*.

Kunin gave Azu another "Needs Development" negative performance evaluation in March 2017, noting similar areas for growth as those that Gary had listed in the 2016 performance evaluation.  *See id*. ¶ 16.  Following a visit to Azu's pharmacy in which Kunin observed little to no improvements, Kunin gave Azu a second coaching on approximately March 31, 2017.  *See id*. ¶ 18.  This second coaching document described many of the same deficiencies as the first coaching document.  *Id*. ¶ 18.

During both coachings, Azu "refused to take ownership of the performance and compliance concerns or discuss necessary steps for improvement."  *Id*. ¶ 22.  She asserts that both coachings were unfair because at the time she had either fixed the problems or made arrangement to do so.  *See id*. ¶¶ 15, 19.

<u>Kunin's Comments to Azu</u>

At various times between November 2016 and March 2017, Kunin made several offensive comments to her.  On approximately January 18, 2017, during their first in-person meeting, Kunin allegedly told Azu (1) that he believed Azu was not available to do her job, (2)

he had "young people from my previous location that I want to bring here to reenergize the store," (3) he wanted to hire a "young person" or "male person" to reenergize the pharmacy, and (4) "We don't want your kind here anymore. We need a new beginning here." ECF No. 46 ¶ 28. On approximately March 29, 2017 Kunin was searching through pharmacy drawers and discussing why they were not labeled when he noticed Azu's purse in an open drawer, put his hand on the purse, and looked at its contents, *see id.* ¶ 32.

Kunin also made several comments to Azu the exact dates of which she cannot recall. At some point before Azu's March 31, 2017 second coaching, *see id.* ¶ 34, Azu alleges that Kunin: (1) said, "Beware, there is a new sheriff in town;" (2) said, "You dumb Nigerians should not seek any more education, it does not make any difference;" (3) said, "We don't need stupid Nigerians here anymore. You are probably a fake Nigerian princess trying to scam people anyway;" (4) said, "Sam's Club, Inc. . . . needs younger blood in this digital age, not an old cargo that is stuck in old ways of doing things;" (5) told Azu that she was stuck in "old ways of doing things" and Kunin wanted to hire a "new" person, *id.* ¶ 29; (6) asked Azu why she did not have a male pharmacist or technician, *see id.* ¶ 30; (7) asked, during a conversation about her mother's health, whether Azu's mother was on Medicare or Medicaid and said that her mother should go back to Africa, *see id.* ¶ 31; and (8) called Azu on two or three occasions after a weekly conference call and asked whether she was actually on the call,[2] *see id.* ¶ 33.

After her second performance coaching on March 31, 2017, Azu did not "deal with [Kunin] as much" other than in weekly conference calls. *Id.* ¶ 34.

<u>Azu's Complaints to Elnajjar</u>

Several days after her second coaching, on approximately April 5, 2017, Azu emailed

---

[2] Azu in fact had previously called in late to a conference call and missed roll call. *See id.* at 8 n.9.

Sanaa Elnajjar—Kunin's manager and Sam's Club Regional Health & Wellness Director—and Dawn Gaschler—Sam's Club Human Resources Manager—a document describing various interactions with Kunin between December 20, 2016 and March 31, 2017. The letter did not mention any of the abovementioned statements that were overtly based on race, national origin, sex, or age. *See id*. ¶ 35; ECF No. 40-7. The email mentioned only that Kunin occasionally spoke to Azu "in an angry tone;" that he accused her of ignoring emails and conference calls; that he accused her pharmacy of being dirty and disorganized; that he accused her of failing to help grow the business; and that he asked her questions about her background (including where she was "originally from," "what made [her] come here," how long had she been here, whether she was married and what her husband did, whether she had children and how old they were, whether her mother lived with her and for how long, and whether her mother had health insurance). ECF No. 46-7 at 490–93.

In response to this email, Elnajjar arranged for a conference call between herself, Azu, and Sam's Club People Partner Colleen Weigle. *See* ECF No. 46 ¶ 36. During this April 21, 2015 conference call, Azu described "some" of the issues set forth in her email, including that Kunin was "loud" to her, overly critical of her, and "picked on" her. *Id*. ¶ 37. Once again, Azu did not mention any of Kunin's alleged statements or conduct that were overtly based on race, national origin, sex, or age. *See id*. Weigle ultimately told Elnajjar that she could not substantiate any wrongdoing. *See id*. ¶ 39.

In March or April 2017 Elnajjar participated in a walk-through of several pharmacies, including Azu's. *See id*. ¶ 20. Elnajjar was disappointed in Azu's walk-through. *See id*. ¶ 21. When Elnajjar asked Azu how she planned to grow certain aspects of her business, Azu responded defensively without providing any specifics responses. *See id*. Elnajjar told Azu to

5

"fix things because [Elnajjar was] not going to micromanage [Azu]." *Id.*

According to Elnajjar, Azu did not mention any problems with Kunin during this visit. *See id.* ¶ 41. However, Azu testified in her deposition that she did complain to Elnajjar that Kunin had asked her "all kinds of questions," although she did not describe anything specific. *Id.* ¶ 40. Later in her deposition, Azu also stated that she had told Elnajjar about the following comments that Kunin made: (1) that "he needs a new person to replace [her]" and "needs a young male pharmacist;" (2) that he called Azu "dumb;" (3) that he "doesn't need any stupid Nigerian here anymore;" (4) that he told Azu her workplace display frame "suck[ed];" and (5) that he "yelled at [her] in front of technicians." *Id.* In her sworn affidavit attached to her response to Sam's Club's motion, she asserts that she also told Elnajjar about various other derogatory comments about her Nigerian nationality and about her age, although she does not clarify when this conversation occurred. *See* ECF No. 49-1 ¶¶ 9–12.

On approximately April 28, 2017 Azu faxed a letter of resignation to Kunin, effective May 19, 2017. *See id.* ¶ 23. Azu did not inform any manager or anyone at human resources why she was resigning, nor did she include that information in her resignation letter. *See id.* ¶ 25. Azu claims that she resigned based on pressure from Kunin, her belief that Kunin would fire her, a hostile work environment cultivated by Kunin, and panic attacks she suffered as a result. *See id.* ¶ 26.

<u>Procedural Background</u>

On October 3, 2017 Azu filed an intake questionnaire with the Equal Employment Opportunity Commission. *See* ECF No. 46-8 at 52. On November 7, 2017 she filed a formal charge of discrimination based on race, national origin, sex, and age. *See* ECF No. 46-8 at 50. In that formal charge, she alleged that she was "harassed" in six instances between January and

May of 2017. *Id.* First, Kunin "coached [her] two times in three weeks" despite Azu's having "worked for the company for fourteen years without any problems or coaching." *Id.* Second, she "was asked one time what count[r]y [she is] from and what made [her] come here." *Id.* Third, her "lama sign" (a board with her picture on it that introduced her to customers as the pharmacy manager) was removed from the sales floor three times.[3] *Id.* Fourth, Kunin "told [her she] was misguided by the prior market manager, who had approved [her] clinical rotation" and that "he would not have approved it." *Id.* Fifth, Kunin "talked down to [her] in the presence of [her] technicians." *Id.* Sixth and finally, she was constructively discharged. *See id.*

On October 9, 2018, Azu filed her second amended complaint with this Court asserting seven claims against Sam's Club: (1) breach of contract; (2) negligent infliction of emotional distress; (3) discrimination based on race, sex, or national origin in violation of Title VII based on an alleged constructive discharge; (4) age discrimination in violation of the ADEA; (5) retaliation in violation of Title VII and the ADEA; (6) hostile work environment in violation of Title VII, the Rehabilitation Act, and the ADEA; and (7) back pay for vacations and breaks. *See* ECF No. 22.

On November 15, 2018, this Court granted Azu's motion to dismiss all of her claims except the following two: (1) hostile work environment based on race, national origin, sex, and age in violation of Title VII and the ADEA, *see* ECF No. 22 ¶¶ 38–40; and (2) discrimination based on constructive discharge, *see id.* ¶¶ 28–34. *See* ECF No. 38; ECF No. 39.

In response, Sam's Club filed the pending motion for summary judgment to dismiss Azu's remaining claims. Sam's Club raises five arguments in its motion: (1) Azu has failed to

---

[3] She later clarified in her testimony that it had been the store manager, not Kunin, who had ordered her lama sign removed from the sales floor and returned to the pharmacy. *See* ECF No. 46-8 186:2–188:8. She testified that Kunin "harass[ed]" her by telling her "that [she] wasn't supposed to have the lama sign in the pharmacy even after [she] had told him" that the store manager had moved it. *Id.*

show that the alleged harassment rises to the level of a hostile work environment, *see* ECF No. 46 at 11; (2) Azu has failed to show that Sam's Club can be held liable for Kunin's conduct, *see id.* at 16; (3) Azu has failed to exhaust her administrative remedies regarding her hostile work environment claim, *see id.* at 17; (4) Azu has failed to establish that she was constructively discharged, *see id.* at 18; and (5) Azu cannot assert a discrimination claim based on her 2017 performance evaluation or her two coachings because she did not allege these facts in either her EEOC charge or her second amended complaint, *see id.* at 19. Sam's Club also raises a sixth argument in its reply: (6) that the Court should admit all of Sam's Club's proffered facts and disregard all of Azu's proffered facts based on Azu's failure to properly substantiate her response with evidence. *See* ECF No. 51 at 2.

## II. STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### III. ANALYSIS

#### A.  <u>Genuine Issues of Material Fact</u>

Sam's Club asserts that there are no genuine issues of material fact because Azu has failed to either rebut any of defendant's facts or support any of her own facts in her response to defendant's motion.  *See* ECF No. 51 at 1–2.  The Court will not consider statements of fact, or rebuttals thereto, which are not supported by competent evidence.  Fed. R. Civ. P. 56(c)(1)(A), 56(e)(2), 56(e)(3).  The Court also need consider only the cited materials, although it may consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  Local Rule 7.1(e) provides that "[e]very citation in a motion, response or reply shall include the specific page or statutory subsection to which reference is made."  D.C. Colo. L. Civ. R. 7.1(e).  Further, "it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record."  *Cross v. The Home Depot,* 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation marks omitted) (quoting *Downes v. Beach,* 587 F.2d 469, 472 (10th Cir.1978)); *see also Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1199 (10th Cir. 2000) (noting that district courts are "not obligated to comb the record in order to make [a party's] arguments for him").

I agree that Azu's response to Sam's Club motion suffers from several infirmities.  Azu does not affirmatively admit or deny any of Sam's Club's facts.  Where she offers her own facts, she generally provides little evidentiary support other than her own statements, nor even contextual descriptions.  *See* D.C. Colo. L. Civ. R. 7.1(e).  She has attached only two exhibits: (1) her own two-page sworn affidavit ("Exhibit A") and (2) the EEOC investigator's one-page letter informing Azu that they have declined to take further action on her charge ("Exhibit B").  Her Statement of Facts contains no citations except one general citation to "Exhibit A" at the

very end.  *See* ECF No. 49 at 4.  Her argument section contains only occasional citation to her two exhibits, often without citation to a specific paragraph or page.  She never cites to her own deposition testimony, Elnajjar's declaration, or Kunin's declaration.  She also provides conclusory or speculative statements without any evidentiary support, such as her claim that "Mr. Kunin actually did not want Ms. Azu to remain as an employee and conspired with Ms. Elnaj[j]ar to let Ms. Azu go."  *See* ECF No. 49 at 9.

Despite Sam's Club's request, however, I will not grant automatic summary judgment based on these shortcomings.  *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) (finding that summary judgment is appropriate only when the moving party has met its initial burden of production, even if nonmovant does not file opposing evidentiary matter).  Given that I have discretion in this matter, I will not punish Azu so harshly for the failings of her attorney.  Instead, to the extent that Azu's affidavit or response provides conclusory or speculative statements without evidentiary support, I disregard those statements.  *See Aludo v. Denver City Council*, No. 06-cv-02257-LTB-MJW, 2008 WL 2782734, at *1–2 (D. Colo. July 8, 2008) (striking portions of affidavits as speculative).  I will not "comb the record" to find facts supporting Azu's case, but I will consider allegations that Azu has presented in prior briefs instead of confining myself to just those allegations in her response to Sam's Club's motion.

## B.  Hostile Work Environment

Sam's Club asserts three defenses against Azu's hostile work environment claim: (1) Azu has failed to exhaust her administrative remedies, *see* ECF No. 46 at 17; (2) Azu has failed to show that the alleged harassment rises to the level of a hostile work environment, *see id.* at 11; and (3) Azu has failed to show that Sam's Club can be held vicariously liable for Kunin's conduct, *see id.* at 16.  I address each argument in turn.

1.  Exhaustion of Administrative Remedies

First, Sam's Club claims that Azu failed to exhaust her administrative remedies for her hostile work environment claim. A defendant may raise the affirmative defense that a plaintiff asserting a Title VII claim failed to exhaust her administrative remedies by filing a charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e–5(e)(1); *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018). A plaintiff's subsequent claim in federal court is limited by the scope of the allegations in that charge. *See Jones v. United Parcel Serv., Inc.,* 502 F.3d 1176, 1186 (10th Cir. 2007). The purpose of this exhaustion requirement is twofold: "to give notice of an alleged violation to the charged party and to give the administrative agency an opportunity to conciliate the claim in furtherance of Title VII's goal of securing voluntary compliance." *Douglas v. Norton*, 167 F. App'x 698, 711 (10th Cir. 2006) (citing *Woodman v. Runyon,* 132 F.3d 1330, 1342 (10th Cir. 1997)).

However, in certain circumstances a plaintiff may seek relief for claims or allegations not included in the EEOC charge. She may do so if these new claims are "reasonably related to the allegations of the EEOC charge." *Mitchell v. City & Cty. of Denver*, 112 F. App'x 662, 667 (10th Cir. 2004) (quoting *Martinez,* 347 F.3d at 1210) (internal quotation marks omitted). A claim is considered "reasonably related" when it "would fall within the scope of the administrative investigation which can reasonably be expected to grow out of the charge that was made." *Mitchell,* 112 F. App'x at 667. This is a "lenient" pleading standard to accommodate the fact that many administrative charges of unlawful employment practices are completed pro se— as was the case here. *Id*.

The Tenth Circuit recently converted this exhaustion requirement from a jurisdictional prerequisite to an affirmative defense. *See Lincoln*, 900 F.3d at 1185 ("[A] plaintiff's failure to

file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim."). This distinction is important "only when the defendant has waived or forfeited the issue, because if exhaustion is not jurisdictional, the court must dismiss only if the issue has been properly presented for decision." *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (internal quotation marks omitted) (quoting *McQueen ex rel. McQueen v. Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007)).

Here, Sam's Club claims that Azu failed to exhaust her administrative remedies for her hostile work environment claim because neither her EEOC charge nor her Intake Questionnaire provided "facts indicating her workplace was permeated with ridicule, intimidation or insult based on her protected states." ECF No. 46 at 17–18. Sam's Club properly raised this affirmative defense in its answer to Azu's second amended complaint. *See* ECF No. 32 at 15. Azu responds to this defense with an irrelevant argument about the limitations period for filing an EEOC charge. *See* ECF No. 49 at 11.

I find that despite Azu's lack of on-point argument in her response, and despite her admittedly sparse EEOC charge, she did properly exhaust her administrative remedies regarding her hostile work environment claim. Azu's EEOC charge fulfills the dual policy objective of the exhaustion requirement. *See Douglas*, 167 F. App'x at 711 (describing the importance of giving notice to both the defendant and the EEOC). Sam's Club relies on *Hunt v. Riverside Transportation, Inc.*, 539 F. App'x 856 (10th Cir. 2013), and *Hartwell v. Southwest Cheese Co.*, 276 F. Supp. 3d 1188, 1203–04 (D.N.M. 2016), in which plaintiffs failed to exhaust their administrative remedies regarding their hostile work environment claims. Yet the focus in both

of these cases was the plaintiffs' failure to give *any* notice that they sought a hostile work environment claim.

In *Hunt*, the Tenth Circuit found that "Hunt's hostile work environment claim could not reasonably be expected to follow the allegations contained in his [EEOC] charge." 539 F. App'x at 859. Hunt had "not specif[ied] that he was complaining of a hostile work environment nor did the narrative portion of his charge adequately describe a hostile work environment." *Id.* Although a plaintiff need not use the exact words "hostile work environment," the district court below noted that Hunt had failed to even assert that he had been "subjected to severe racial harassment." *Hunt v. Riverside Transp., Inc.*, No. 11-2020-DJW, 2013 WL 1497805, at *10 (D. Kan. Apr. 11, 2013), *aff'd*, 539 F. App'x 856 (10th Cir. 2013). He merely asserted that he was "treated with disrespect," including being subject to certain offensive comments, and was "being discriminated against . . . by being forced to drive the company van and suspended without pay." *Id.* As such, his factual allegations were "insufficient to put [defendant] on notice that Hunt was alleging a hostile work environment claim" rather than simply a discrimination claim. *Id.*

Similarly, in *Hartwell* the court emphasized that the plaintiff's EEOC charge contained no reference to or description of a hostile work environment, nor did it use words such as "harassment" or "abuse." *See* 276 F. Supp. 3d at 1203–04. Hartwell had merely alleged in her charge that the defendant had not promoted her, had passed her over for a "younger, [w]hite [e]mployee," and had suspended her for having a tongue ring. *Id.* at 1204. As such, the factual allegations in Hartwell's EEOC charge "would not lead an investigator to find racial or sexual harassment." *Id.* at 1204–05.

Here, I find that Azu did properly indicate in her EEOC charge that she sought to pursue a hostile work environment claim. *See Smith*, 904 F.3d at 1166. In contrast to both *Hunt* and

*Hartwell*, Azu did assert in her EEOC charge that she had been "harassed." ECF No. 46-8 at 50; *see also Tastan v. Los Alamos National Security, LLC*, No. 117CV00664JCHSCY, 2019 WL 2163991 (D.N.M. May 17, 2019) (finding that plaintiff's allegations in her amended complaint concerning a hostile work environment were within the scope of her EEOC charge, where she stated merely that she was "subjected to different terms and conditions" and "harassed through constant monitoring and harsher treatment"). Azu also alleged six specific incidents of harassment, including two arguably related to race or national origin (including Kunin's asking her "what count[r]y [she is] from" and her picture's repeated removal from the sales floor). *See id*. Considering the language Azu used and the litany of harassment she alleged, a hostile work environment claim "would fall within the scope of the administrative investigation which can reasonably be expected to grow out of" Azu's EEOC charge. *Mitchell,* 112 F. App'x at 667. Indeed, the EEOC investigator himself was aware that Azu was asserting a hostile work environment claim. The investigator's internal memorandum discusses (albeit in the context of denying of the existence of) Azu's alleged "severe or pervasive harassment which rises to the level of a violation." *Id*. at 49. As such, Sam's Club was properly on notice that Azu sought to bring a hostile work environment claim. Why Azu excluded from her EEOC charge her allegations of Kunin's truly condemnable comments is a question for the factfinder, not for summary judgment.

## 2. Hostile Work Environment as a Matter of Law

Second, Sam's Club claims that even if Azu has exhausted her administrative remedies, she has failed to establish as a matter of law that her alleged harassment constitutes a hostile work environment based on race, national origin, sex, or age. To survive summary judgment on a hostile work environment claim under Title VII and ADEA, a plaintiff must show that a

rational jury could find that the harassment (1) was pervasive or severe enough to alter the terms and conditions of employment and (2) was based on race, national origin, sex, or age, or stemmed from racial, national origin, sex, or age animus. *See Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (applying the standard to Title VII); *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (applying the standard to ADEA).

Here, Sam's Club argues that Azu has not established either prong of the hostile work environment claim: (1) She has not established that the alleged harassment was sufficiently pervasive or severe and (2) she has not established that the alleged harassment was based on race, national origin, sex, or age. *See* ECF No. 46 at 12. I address each prong in turn.

a. Based on a Protected Ground

I first address whether the harassment was based on a protected ground. Isolated or ambiguous comments, or "stray remarks," are not material in showing that an employer's actions were based on discrimination. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994). However, even conduct not expressly based on a protected ground can be relevant to a hostile work environment claim. *See O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999) (noting that "if it reasonably could be inferred that the conduct was related to [a protected ground] . . . then it is for the fact finder to decide whether such an inference should be drawn"). The nature of a hostile work environment claim is such that "[e]vidence of a general work atmosphere" and of "specific hostility directed toward the plaintiff . . . is an important factor in evaluating the claim." *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415 (10th Cir. 1987).

Here, Sam's Club alleges that Kunin's comments were "stray remarks" and that Azu has nothing but speculation to link Kunin's comments and conduct to a hostile work environment

based on a protected ground. In response, Azu merely repeats her allegations. She offers no case law other than a bare-bones description of the hostile work environment standard. She does not refute any of Sam's Club's proffered case law comparators. She fails to even incorporate many of the statements and conduct that she had previously alleged in her second amended complaint. However, in my discretion and in the sake of equity I will consider the facts beyond those alleged in Azu's response.

Taking all inferences in favor of the nonmoving party, I find that Azu has presented sufficient evidence to preclude summary judgment on her hostile work environment claim based on race, national origin, sex, or age. Regarding race or national origin, Kunin allegedly made at least three derogatory comments to Azu, including: (1) saying at some unknown time, "You dumb Nigerians should not seek any more education, it does not make any difference;" (2) saying at some unknown time, "We don't need stupid Nigerians here anymore. You are probably a fake Nigerian princess trying to scam people anyway;" and (3) asking, at some unknown time, whether Azu's mother was on Medicaid or Medicare and saying she should "go back to Africa." ECF No. 49 ¶¶ 24–25, 30–31 (providing Azu's unsupported allegations); ECF No. 46 ¶¶ 29, 31 (providing Azu's allegations as supported by defendants' citations to the record). Kunin made at least five comments about age to Azu over the course of at least three conversations, including: (1) "I have young people from my previous location that I want to bring here to re-energize this store"; (2) "We don't want your kind here anymore. We need a new beginning here;"[4] (3) saying that he wanted to hire a "young person;" (4) "Sam's Club, Inc. . . . needs younger blood in

---

[4] Azu alleges that Kunin made this statement during the same conversation in which he repeatedly referred to hiring new "young people" and made no reference to any other protected ground. *See* ECF No. 46 ¶ 28. Azu does not provide any further explanation of this statement, nor does she negate Sam's Club's characterization of this statement as "vague." *Id.* at 13. As such, I interpret this comment as referring to age.

this digital age, not an old cargo that is stuck in old ways of doing things;" and (5) saying Azu was stuck in "old ways of doing things." *Id*. Kunin made at least two comments regarding sex to Azu, including: (1) saying he wanted to get a "male person" to re-energize the pharmacy and (2) asking Azu why she did not have male employees.[5] ECF No. 46 at 13.

Azu also notes many other incidents relevant to her hostile work environment claim which are not expressly based on a protected ground. Some of the highlights include: (1) Kunin searching Azu's purse and asking her "what [she was] hiding" in there, ECF No. 49 ¶¶ 11; (2) Kunin disciplining Azu for the same issues repeatedly within a two-month time span, including two performance coachings and one performance evaluation, *see* ECF No. 49-1 ¶ 13; ECF No. 46 ¶¶ 14–19; (3) on two or three occasions, Kunin calling Azu after a weekly conference call and asked whether she was actually on the call,[6] *see id*. ¶ 33, and (4) Kunin "harassing" Azu when he told her "that [she] wasn't supposed to have the lama sign in the pharmacy even after [she] had told him" that the store manager was the one who had moved it to the pharmacy, *see* ECF No. 46-8 at 186:2–188:8.

I find that a rational jury could conclude that the alleged comments and conduct were based on race, national origin, sex, or age. The comments related to race or national origin are unambiguously related to a protected ground, unambiguously derogatory, and unambiguously directed at Azu (rather than merely said in her presence)—for example, Kunin's calling Azu "a stupid Nigerian[]." *Cf. Cone*, 14 F.3d at 531 (reading no discriminatory animus into supervisor's ambiguous comment during a meeting that "long-term employees have a diminishing return"). Regarding the age-related comments, all are unambiguously directed at Azu, at least some are

---

[5] It is worth noting that Azu does not reference any sex-related comments anywhere in her response, although she did mention them in her second amended complaint.
[6] Azu in fact had previously called in late to a conference call and missed roll call. *See id*. at 8 n.9.

unambiguously related to age (Kunin's saying he wanted to bring "young people"), and at least some are unambiguously derogatory (Kunin's calling Azu "old cargo"). Finally, the sex-related comments may be less egregiously derogatory but they are still unambiguously related to a protected ground and directed at Azu.

Further, Azu has demonstrated a nexus between the expressly discriminatory comments and the non-expressly discriminatory conduct. The same individual—Kunin—is responsible for all of the comments and conduct, including the disciplinary action, all of which occurred intermittently over a five-month period between November 2016 and March 2017. *Cf. Al-Kazaz v. Unitherm Food Sys., Inc.*, 594 F. App'x 460, 462–63 (10th Cir. 2014) (finding insufficient link between plaintiff's discipline and three racist comments made several months prior by three different coworkers). Azu also provides evidence that she was a lauded employee with no disciplinary history up until Kunin's arrival. A rational jury could therefore find that even the non-expressly discriminatory conduct was based on a protected ground.

### b. Severe or Pervasive

To establish that harassment is sufficiently pervasive or severe to survive summary judgment, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult" so as "to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). Courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Chavez v. New Mexico,* 397 F.3d 826, 832–33 (10th Cir. 2005). A plaintiff must show more than "a few isolated incidents of racial enmity or sporadic racial slurs," but rather "a steady barrage of

opprobrious racial comments." *Id.* at 832 (internal quotation marks omitted) (internal citation omitted) (quoting *Hicks,* 833 F.2d at 1412–13). In determining pervasiveness, I consider all of the comments and conduct in totality. *See Hicks*, 823 F.2d at 1416 (aggregating evidence of racial hostility with evidence of sexual hostility); *Nieto v. Kapoor*, 268 F.3d 1208, 1218 (10th Cir. 2001) (same); *see also Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1227 (10th Cir. 2015) (aggregating evidence of sexual hostility with evidence of hostility not explicitly based on any protected ground).

Here, I find that a rational jury could find that the conduct is sufficiently pervasive or severe to constitute a hostile work environment based on either race, national origin, sex, or age. None of the incidents appear to be made in jest. Many of the comments are expressly humiliating ("stupid Nigerians," "fake Nigerian princess," "old cargo," etc). Even disregarding the non-expressly discriminatory conduct, ten comments of such severity over a five-month period is more than sufficiently pervasive. *See Walker v. United Parcel Serv.,* 76 F. App'x 881, 887 (10th Cir. 2003) (denying summary judgment where the record showed eight incidents over eight-month period); *Smith v. Northwest Fin. Acceptance, Inc.,* 129 F.3d 1408, 1413–15 (10th Cir. 1997) (denying summary judgment where the record showed six comments over 23-month period). The fact that all ten comments came from the same person, which person was Azu's direct supervisor, further bolsters her claim. *Cf. Al-Kazaz*, 594 F. App'x at 462–63 (granting summary judgment in part because the three alleged comments were "discrete, isolated, unrelated, and made by different co-workers").

### 3. Sam's Club's Vicarious Liability

Third, Sam's Club argues that even if Azu can establish a hostile work environment sufficient to preclude summary judgment, Sam's Club cannot be held liable for Kunin's conduct.

"An employer may be vicariously liable to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee in either of two situations." *Pa. State Police v. Suders,* 542 U.S. 129, 143–46 (2004). First, if "the supervisor's harassment culminates in a tangible employment act, such as discharge, demotion, or undesirable reassignment," the employer is vicariously liable. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Second, if there was no tangible employment action, then the employer may preclude vicarious liability if it can prove the following affirmative defense: (1) The employer "exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior" and (2) the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

Here, I find that there is sufficient genuine dispute of material fact to preclude summary judgment on this affirmative defense. As discussed in full below, there was no constructive discharge in this case. As such, there was no tangible employment action, and Sam's Club is therefore entitled to prove its affirmative defense against vicarious liability. *See Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 961 (10th Cir. 2012*) (*citing *Suders,* 542 U.S. at 148–49) (noting that constructive discharge precipitated by an official act is a tangible employment action). There is no factual dispute regarding the first prong of the affirmative defense. Sam's Club asserts that it maintained an anti-harassment policy to "prevent and correct promptly any [discriminatory] behavior." *Ellerth,* 524 U.S. at 765; *see also* ECF No. 46 ¶ 5. Azu does not dispute either the existence or the adequacy of this policy.

Regarding the second prong, Sam's Club asserts that Azu "unreasonably failed to take advantage" of that policy because she unreasonably delayed in complaining to Elnajjar about

Kunin.  *See* ECF No. 46 at 16.  Azu complained to Elnajjar on three different occasions: (1) the April 5, 2017 email, (2) the April 21, 2017 conference call, and (3) Elnajjar's pharmacy walk-through in March or April 2017.  Azu did not mention any discriminatory conduct in either the email or the conference call, instead complaining only generally about Kunin's treatment of her.  An employer cannot prevent and correct and discriminatory behavior if the employee does not convey that such behavior is occurring.  *See Velez v. City of Chicago*, 442 F.3d 1043, 1048 (7th Cir. 2006) (no liability where plaintiffs complained in only broad terms without identifying specific racial harassment).  However, Azu does allege that she told Elnajjar about Kunin's discriminatory comments during the pharmacy walk-through.  Sam's Club asserts that Azu's delaying her complaints until March or April 2017 is unreasonable as a matter of law.  I disagree.  Azu alleges that her harassment began in November 2016, when Kunin was hired, and lasted until at least March 31, 2017.  Azu first complained about that harassment at the latest five months after it began and at the latest one month after it ended, depending on when the pharmacy walk-through occurred.  In this particular case, I cannot say that Azu unreasonably delayed in reporting the harassment to her employer as a matter of law.[7]

Accordingly, Sam's Club's motion for summary judgment on Azu's hostile work environment claim is denied.

## C.  Constructive Discharge

Sam's Club also asserts that Azu has failed to establish a constructive discharge claim as a matter of law.  To survive summary judgment on a constructive discharge claim, a plaintiff must show that her employer made her working conditions so intolerable through unlawful acts

---

[7] Of course, there also remains a genuine dispute of material fact for the fact finder as to whether Azu truly reported the discriminatory conduct to Elnajjar.  Sam's Club proffers Elnajjar's testimony that Azu never complained about Kunin's discriminatory conduct, even during the pharmacy walkthrough.  *See* ECF No. 46 ¶ 41.

"that a reasonable person in the employee's position would feel forced to resign." *Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004). She must produce evidence showing that her working conditions were worse than "merely . . . difficult or unpleasant." *Fischer v. Forestwood Co.*, 525 F.3d 972, 981 (10th Cir. 2008). The conditions "must be so severe that the plaintiff simply had no choice but to quit." *Exum*, 389 F.3d at 1135 (citing *Lighton v. Univ. of Utah,* 209 F.3d 1213, 1222 (10th Cir. 2000)) (noting that "even forcing an employee to choose between resignation and termination is not necessarily a constructive discharge, unless the employee's decision is, for some reason, involuntary"). A plaintiff must show that, at the time of her resignation, her employer did not allow her the opportunity to make a free choice regarding her employment relationship. *See Yearous v. Niobrara County Mem'l Hosp., 128 F.3d 1351, 1357 (10th Cir.1997).*

Further, a compound hostile-environment constructive discharge claim requires a higher evidentiary showing than a hostile work environment claim. *See Suders,* 542 U.S. at 147 (noting that "a hostile-environment constructive discharge claim entails something more" than conduct that amounts to actionable harassment"); *Gerald v. Locksley,* 785 F. Supp. 2d 1074, 1119 (D.N.M. 2011) ("A hostile work environment can become so severe that it gives rise to a constructive discharge, which is an adverse employment action." (internal quotation marks omitted)).

I find that Azu has failed to establish a constructive discharge claim. It is worth noting that, again, Azu provides no legal argument in support of her claims beyond bare-bones standards, reiterations of her allegations, and conclusory statements. Even so, the facts in this case fail as a matter of law to constitute constructive discharge. Azu had limited interaction with Kunin following her second performance coaching on March 31, 2017—thus Kunin's improper

comments and conduct ended a full month prior to Azu's tendering of her resignation on April 28, 2017. *See* ECF No. 46 ¶ 34. Azu then gave a further three-weeks notice before resigning. *See id.* ¶¶ 23–24; *Shelar v. Ameripride Servs., Inc.*, No. 03-4205-SAC, 2006 WL 1877010, at *9 (D. Kan. July 6, 2006) ("Giving several weeks notice of the date on which one will be compelled to resign is unprecedented, in this court's experience, for a successful constructive discharge claim"). Azu herself admitted that she believed that because she "was coached twice for the same issues," she "knew that the third coaching would be termination." *See* ECF No. 49-1 ¶ 13. Azu may have resigned because she believed she would be imminently terminated, or because she was unhappy with her work environment, but this is not sufficient to establish a constructive discharge claim.

Accordingly, Sam's Club's motion for summary judgment on Azu's constructive discharge claim is granted and the claim is dismissed.

## ORDER

Defendant's motion for summary judgment, ECF No. 46, is GRANTED in part and DENIED in part. The Court enters summary judgment dismissing plaintiff's claim for constructive discharge. Summary judgment is denied with respect to plaintiff's claim for hostile work environment based on race, national origin, sex, or age.

DATED this 29th day of October, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge